**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
JARRET ACEVEDO,

                Plaintiff,

      - against -                        **REPORT AND**
                                        **RECOMMENDATION**

                                      CV 14-253 (JS) (AKT)

COOL POWER, LLC, DUKE SCHMIDER and
PETER TAORMINA,

                Defendants.
---------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

      Plaintiff Jarret Acevedo ("Plaintiff") brings this putative collective/class wage and hour

action against his former employer Cool Power, LLC ("Cool Power") and supervisors Duke

Schmider and Peter Taormina (collectively, the "Defendants") for their failure to pay him

overtime.  Cool Power is an HVAC installation and servicing company based in Hauppauge,

New York.  Acevedo seeks relief under the Fair Labor Standards Act ("FLSA") and the New

York Labor ("NYLL") and for common law breach of contract and *quantum meruit*.  Having

been employed by Defendants as a Plumber Mechanic from January 31, 2010 through March 4,

2013, Plaintiff alleges that he was not compensated at one and one-half times his regular rate of

pay in weeks where he worked in excess of 40 hours.  In addition, Plaintiff was directed to travel

from Defendants' warehouse location in Hauppauge, New York to job sites between New York

City and Montauk, New York without being compensated for that time.

      Having obtained Certificates of Default against the Defendants, Plaintiff now moves for

entry of default judgment.  Counsel for Defendants has since appeared in this action and opposes

the motion for default judgment and, separately, seeks vacatur of the Certificates of Default.
Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Judge Seybert has referred the
motion for default judgment to this Court for a Report and Recommendation. *See* DE 19. For
the reasons set forth below, the Court respectfully recommends to Judge Seybert that Plaintiff's
motion for default judgment be DENIED and that the Court vacate the June 9, 2014 Certificates
of Default entered against the Defendants.

## II.   BACKGROUND

### A.   The Complaint

The following facts are taken from the Complaint and are assumed to be true for purposes
of this motion. Plaintiff was employed by Defendants as a Plumber Mechanic from January 31,
2010 to March 4, 2013, and worked out of the corporate Defendant's warehouse facility in
Hauppauge, New York. *See* Complaint ("Compl.") ¶¶ 7, 18 [DE 1]. Defendant Cool Power has,
at all relevant times, been "engaged in the business of, including but not limited to, selling,
installing and servicing air conditioning and heating equipment, oil burners, plumbing fixtures,
and selling fuel oil and other consumer goods in interstate commerce." *Id.* ¶ 10. Cool Power is
co-owned by individual Defendants Schmider and Taormina. *Id.* ¶ 14. Plaintiff worked directly
under the supervision of Schmider and Taormina. *Id.* ¶ 17.

Cool Power's corporate structure is divided into several departments, including HVAC,
Appliance Repair, Service, Plumbing, Oil Delivery, Tin Shop, Warehouse, and Office. *Id.* ¶ 20.
Defendant Cool Power's Plumbing and HVAC employees "routinely worked over forty hours in
a given week without receiving premium overtime compensation for those hours." *Id.* ¶ 21.
Plaintiff alleges that a majority of the Service, Plumbing and HVAC employees' uncompensated

hours consisted of traveling to the company shop from a worksite after the conclusion of their shifts.  *Id.* ¶ 22.

As a Plumber Mechanic, Plaintiff was responsible for reporting to Cool Power's Hauppauge warehouse each morning to receive daily assignments and then traveling to various commercial and residential worksites to perform installation and servicing tasks.  *Id.* ¶ 23. Specifically, Plaintiff was charged with installing and/or servicing oil burners, plumbing equipment, domestic water distribution systems, sanitary piping and venting, plumbing fixtures, and gas supply manifolds at locations throughout Long Island and the Tri-State area.  *Id.* Plaintiff traveled to worksites as far west as New York City and as far east as Montauk, resulting in travel times ranging from a few minutes up to three hours.  *Id.* ¶ 24.  However, as Plaintiff explains, "[n]one of Plaintiff's travel time from the worksite back to the warehouse or the work Plaintiff performed while at the warehouse was compensated by the Corporate Defendant."  *Id.*

Plaintiff claims further that he was required to perform a number of tasks prior to beginning his shift at the job side (*e.g.*, receiving daily materials, sorting and distributing materials, loading/unloading materials, etc.).  *Id.* ¶ 26.  Plaintiff was also required to perform a number of tasks after driving back to the Cool Power warehouse in Hauppauge each evening (*e.g.*, return the company van, transport coworkers to the company shop, return materials/equipment for other crews, etc.).  *Id.* ¶ 27.

Plaintiff and Cool Power entered into an oral agreement at the time of Plaintiff's hiring, which provided Plaintiff with an hourly wage in exchange for his services.  *Id.* ¶ 28.  Cool Power advised Plaintiff and others similarly situated at the time of their hire that they were eligible to receive overtime compensation by one of two different methods:  (1) tax-free at the straight rate of pay (in violation of the FLSA and NYLL) or (2) the appropriate overtime rate in a check

including taxes. *Id*. ¶¶ 29, 50. However, in or about May 2011, Cool Power informed its employees that they were no longer permitted to work in excess of eight hours in a given day and that overtime compensation was to be eliminated indefinitely. *Id*. ¶ 32. Having received notification of this change in policy, Plaintiff advised Cool Power that "he could no longer afford to work for the company without overtime compensation." *Id*. ¶ 33. In turn, Cool Power converted Plaintiff from an hourly to a salaried employee, advising Plaintiff that he was the sole employee who had received this offer and would be subject to termination should he discuss this arrangement with other employees. *Id*. ¶ 33. Plaintiff began receiving a gross weekly salary on or about September 11, 2011. *Id*. ¶ 36. Plaintiff remained a salaried employee until approximately February 2013 when he was converted back to an hourly employee. *Id*. ¶ 37.

From the commencement of his employment until approximately May 2011, Plaintiff received overtime compensation only for the hours he worked in excess of 40 hours per week at the worksite. *Id*. ¶ 38. Plaintiff and those similarly situated to him, however, were not compensated at all for (1) hours worked in excess of 40 hours per week not spent at the worksite, (2) time spent traveling from the worksite to Cool Power's warehouse, and (3) time spent loading his work van with materials needed for the following day's assignment. *Id*. ¶¶ 39, 47-49.

Between May 2011 and the beginning of February 2013, Plaintiff was not compensated at all for hours worked in excess of 40 in a week. *Id*. ¶ 39. Plaintiff estimates that he worked 63 hours of overtime for Cool Power from February 2010 to June 2010 and was not compensated for these hours. *Id*. ¶ 40. From June 2010 through mid-November 2010, Plaintiff was not compensated for 74 hours of overtime worked. *Id*. ¶ 41. Cool Power failed to compensate Plaintiff for overtime hours worked during the entire period when he was converted to a salaried employee (December 2011 – February 2013), amounting to 405 hours of unpaid overtime. *Id*.

¶ 44.  From the beginning of February 2013 until Plaintiff's last day of employment with Cool Power in March 2013, Plaintiff further estimates that he was not compensated for 9 hours of overtime.  *Id*. ¶ 45.  After sustaining an injury while on the job on February 27, 2013, Plaintiff remained employed with Cool Power only for a few more days, until March 4, 2013.  *Id*. ¶ 46.

Plaintiff claims that Cool Power and individual Defendants Schmider and Taormina are "joint employers" within the meaning of the FLSA and NYLL.  *Id*. ¶¶ 52-63.  Further, Plaintiff alleges that "[a]s a matter of economic reality, all Defendants are joint employers of Plaintiff and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein."  *Id*. ¶ 63.

The Complaint also contends that the corporate Defendant Cool Power is the alter ego of the individual Defendants Schmider and Taormina.  *Id*. ¶¶ 64-68.  Cool Power has "no separate legal existence from the Individual Defendants."  *Id*. ¶ 68.  The Defendants' violations, Plaintiff further alleges, were willful in nature.  *Id*. ¶¶ 69-75.  The individual Defendants were "aware of their requirement to pay Plaintiff for each hour worked and at a higher overtime premium of 150% of their regular rate for each hour worked in excess of 40 hours per week."  *Id*. ¶ 70.

Finally, Plaintiff has asserted his FLSA claims as a putative collective action on behalf of himself and all others similarly situated.  *Id*. ¶¶ 76-80.  Likewise, Plaintiff has asserted his NYLL claims on behalf of himself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.  *Id*. ¶¶ 81-87.

Plaintiff asserts the following causes of action against all Defendants:  (1) breach of contract; (2) failure to pay wages in violation of the NYLL; (3) *quantum meruit;* and (4) failure to pay wages in violation of the FLSA.  *Id*. ¶¶ 81-105.

### B.  Relevant Procedural History

Plaintiff filed the Complaint on January 13, 2014.  *See* DE 1.  On January 31, 2014, a private process server served two copies of the Summons and Complaint on corporate Defendant Cool Power via service on the New York Secretary of State, pursuant to FED. R. CIV. P. 4(h)(1)(B).  *See* DE 6.  Plaintiff filed an affidavit of service on ECF on February 13, 2014, confirming that Cool Power was served with process.  *Id.*

On February 7, 2014, a private process server served individual Defendants Schmider and Taormina with two copies of the Summons and Complaint by serving co-worker "Liz (Smith)," "full name refused" - - a person of suitable age and discretion - - at Cool Power's warehouse located at 10 Newtown Place, Hauppauge, New York 11788, pursuant to FED. R. CIV. P. 4(e)(2)(B).  *See* DE 7, 8.  The private process server deposited in the United States mail on February 12, 2014 additional copies of the Summons and Complaint directed to each of the individual Defendants at the aforementioned Hauppauge, New York location.  *See* DE 7, 8.  On February 17, 2014, Plaintiff filed affidavits of service on ECF confirming that these two individual Defendants were served with process.  *See* DE 7, 8.  No Answers were filed on behalf of any of the Defendants.

The Rule 16 Initial Conference was held on April 11, 2014.  *See* DE 10.  Although Plaintiff's counsel was present, neither Defendants nor their counsel appeared.  *Id.*  In light of the Defendants' failure to answer and appear in the action, the Court directed Plaintiff's counsel to "take steps to have the Certificate of Default entered" and to "file his motion for entry of default judgment no later than June 13, 2014."  *Id.*

Plaintiff thereafter requested that a Certificate of Default be entered against the Defendants on June 5, 2014.  *See* DE 11-13.  On June 9, 2014, the Clerk of the Court issued

Certificates of Default against Defendants Cool Power, Duke Schmider, and Peter Taormina. *See* DE 14. Counsel for Plaintiff filed a motion for entry of default judgment on June 30, 2014. *See* DE 17. On July 2, 2014, Judge Seybert referred the motion for default judgment to this Court. *See* DE 19.

Subsequently, on July 24, 2014, an attorney filed a Notice of Appearance on behalf of the Defendants. *See* DE 20. On that same date, the attorney filed a letter motion requesting a two-week extension of time to oppose Plaintiff's motion for default judgment. *See* DE 21. Counsel explained that he had spoken to Plaintiff's counsel about a potential withdrawal of the default motion in exchange for serving the Defendants' Answer within 20 days. *Id*. Plaintiff's counsel stated that he needed to discuss this request further with co-counsel. *Id*. After reviewing the July 24, 2014 letter, the Court granted Defendants' motion for an extension of time to August 7, 2014 to oppose Plaintiff's default judgment motion. *See* Jul. 25, 2014 Electronic Order.

On August 6, 2014, Defendants filed a second letter motion seeking additional time to oppose Plaintiff's motion. *See* DE 22. In that letter, counsel stated that

> [f]urther to our recent letter, we have spoken with Plaintiff's counsel regarding settlement and the default motion. Counsel is in the process of providing us a settlement demand and we intend to negotiate in good faith. Counsel has not agreed to withdraw the motion at this time.
>
> To avoid the cost of opposing the motion and potentially burdening the Court, we hereby request that the motion be held in abeyance to permit the parties the opportunity to attempt to resolve the case. If the case cannot be resolved (within 10 days to 2 weeks), we will notify the Court and respond to the default motion (in whatever time frame designated by the Court).

*Id*. Approximately one month later, on September 2, 2014, Defendants wrote to the Court to advise that "the parties have engaged in good faith negotiations in an effort to resolve the case, but regrettably, at this time have been unable to reach a resolution." *See* DE 23. Further,

Defendants reported that Plaintiff's counsel is "unwilling to withdraw[] his default motion." *Id.*

Accordingly, Defendants requested a second extension of time, until September 12, 2014, to

oppose the motion. *Id.* In light of the contents of the letter, the Court granted the Defendants'

second motion for an extension on September 4, 2014. *See* Sept. 4, 2014 Electronic Order.

Defendants filed their opposition on September 12, 2014. *See* Mem. of Law in Opp'n to

Pl.'s Mot. for a Default J. ("Defs.' Opp'n") [DE 24]. In opposing the motion for entry of default

judgment, Defendants argued that, pursuant to Rule 55(a), "good cause" existed to vacate the

entries of default issued by the Clerk of the Court. *Id.* at 5. Plaintiff filed his reply brief in

further support of the motion for entry of default judgment on October 6, 2014. *See* Pl.'s Mem.

of Law in Reply to Defs.' Opp'n to Pl.'s Mot. for a Default J. ("Pl.'s Reply") [DE 26].

## III.   DISCUSSION

The Second Circuit has held that "'strong public policy favors resolving disputes on the

merits' and that, 'although courts have an interest in expediting litigation, abuses of process may

be prevented by enforcing those defaults that arise from egregious or deliberate conduct.'"

*Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) (quoting *Am. Alliance Ins.*

*Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)) (holding, in a motion to vacate default

judgment, that the corporate defendant's status prevented it from appearing *pro se* and,

moreover, its repeated contact with the district court and efforts to retain new counsel did not

evidence willfulness); *see also Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 12 Civ.

3073, 2014 WL 3943099, at *5 (E.D.N.Y. Aug. 12, 2014) ("policy considerations favor a denial

of the motion because striking the Answer, which would be the functional equivalent of entering

a default judgment, would 'violate the policy of resolving cases on the merits.'") (internal

quotation omitted).

A court may set aside the entry of default for "good cause shown." *Int'l Reformed University & Seminary v. Newsnjoy USA*, No. 13 Civ. 3156, 2014 WL 923394, at *3 (E.D.N.Y. Feb. 14, 2014), *adopted by* 2014 WL 923394 (E.D.N.Y. Mar. 10, 2014). "Because Rule 55(c) does not refer to a motion requirement, a court may set aside an entry of default *sua sponte.*" *Miller v. Madison*, No. 12 Civ. 874, 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) (emphasis in original). "Where there has been a certificate of default by the Clerk of the Court, but no default judgment, the Court decides the motion to vacate the entry of default pursuant to Rule 55(c), which is more lenient than the standard to set aside a default judgment under Rule 60(b)." *Int'l Reformed University & Seminary*, 2014 WL 923394, at *3 (citing *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b).")). "In determining whether good cause exists to set aside an entry of default, courts should consider:  (1) 'the willfulness of the default'; (2) 'the existence of a meritorious defense'; and (3) 'the level of prejudice that the non-defaulting party may suffer should relief be granted.'" *Id.* (quoting *Pecarsky,* 249 F.3d at 171). "The decision to vacate an entry of default 'under Rule 55(c) [is] left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.'" *Miller,* 2013 WL 2181240 at *2 (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993)).

As a preliminary matter, the Court notes that, although Defendants have not formally cross-moved for vacatur of the Certificates of Default, the Court will treat Defendants' opposition accordingly in view of the arguments concerning "good cause" raised by counsel. *See* Defs.' Opp'n at 5-8; *see also Miller*, 2013 WL 2181240, at *2 (under Rule 55(c), "a court

may set aside an entry of default *sua sponte*.").  In moving for entry of default judgment, Plaintiff argues that Defendants' failure to respond to the Complaint - - despite lawful service of process on corporate Defendant Cool Power and individual Defendants Schmider and Taormina - - satisfies the necessary showing of the "willfulness" of Defendants' default.  *See* Mem. of Law in Supp. of Pl.'s Mot. for Default J. Against All Defs. ("Pl.'s Mem.") at 7 [DE 18].

As evidence that their default was not intentional, Defendants have annexed an affidavit from Elizabeth Panzarella, the Office Manager at Cool Power, who accepted service of the Summons and Complaint on behalf of individual Defendants Schmider and Taormina on January 31, 2014.  *See* Panzarella Affidavit annexed to the Declaration of Jeffrey S. Ettenger as Ex. "1" ("Panzarella Aff.") ¶ 1  [DE 24-2].  Ms. Panzarella explains that "[i]n or around January, 2014 a gentleman came to the office and dropped off papers."  *Id*. ¶ 2.  Since Ms. Panzarella is "not experienced in legal matters," she "did not know what they were."  *Id.*  Ms. Panzarella affirms that she then placed the papers in a "file drawer and did not remove them thereafter."  *Id.* Further, she "did not tell anyone else with the Company, including Mr. Schmider or Mr. Taormina about the papers."  *Id.*

In June 2014, Defendant Schmider approached Ms. Panzarella and asked her whether she was "served papers regarding Jarret Acevedo."  *Id*. ¶ 3.  Ms. Panzarella states that "[she] admitted [she] did, but failed to advise [Schmider] of receipt of same."  *Id.*  She now realizes that "said papers were important and that [she] should have given them to Mr. Schmider."  *Id.* Concluding, Ms. Panzarella notes that "[i]f I had known that these papers required a response I certainly would have provided them to my employer and hope that my unintentional actions do not prejudice my employer in any way."  *Id*. ¶ 4.

Similarly, individual Defendants Schmider and Taormina have submitted affidavits urging that they did not intend to ignore the Summons and Complaint in this action.  Duke Schmider, one of the principals of Cool Power, affirms that he was served with a Notice of Default Motion by Plaintiff's counsel in June 2014.  *See* Schmider Affidavit annexed to the Declaration of Jeffrey S. Ettenger, Esq., as Ex. "2" ("Schmider Aff.") ¶¶ 1-2 [DE 24-3].  However, prior to receiving the motion, Schmider was "not aware that the Company or [he] individually had been served legal papers in this action."  *Id*. ¶ 2.  After receiving these motion papers, Schmider "contacted Cool Power's other principle [*sic*], Peter Taormina and he advised [Schmider] that he likewise did not receive the initial lawsuit papers."  *Id*.  Schmider and Taormina state that "[u]pon receipt of the motion papers, we immediately retained Kaufman, Dolowich & Voluck, LLP to defend the Company regarding this lawsuit."  *Id*. ¶ 3; *see also* Taormina Affidavit annexed to the Declaration of Jeffrey S. Ettenger, Esq., as Ex. "3" ("Taormina Aff.") ¶ 3 [DE 24-4].  The individual Defendants claim that they were advised by their counsel that Cool Power was served through the Secretary of State and that they had been individually served through receptionist Elizabeth Panzarella.  *See* Schmider Aff. ¶ 3; Taormina Aff. ¶ 3.

Upon learning of the foregoing events, Schmider approached Ms. Panzarella regarding service of the papers.  *See* Schmider Aff. ¶ 4.  As Schmider notes, Ms. Panzarella "did acknowledge that they were received, but she was not aware of what they were or their significance and did not advise me that she received them."  *Id*.  The papers were instead "put in a file and remained there until we were served the motion papers."  *Id.* ¶ 4; Taormina Aff. ¶ 4.  Both Schmider and Taormina note that "obviously it was an error to not provide [them] the papers and if [they] had been provided same [they] would have promptly retained counsel and

requested that they defend the Defendants regarding this lawsuit."  Schmider Aff. ¶ 4; Taormina Aff. ¶ 4.

Counsel for Defendants, Attorney Jeffrey S. Ettenger, has also submitted a declaration in support of the motion, arguing, *inter alia*, that Defendants' actions do not reflect an intentional or willful disregard of their obligations to respond to the Complaint.  *See* Declaration of Jeffrey S. Ettenger, Esq., ("Ettenger Decl.") [DE 24-1] ¶¶ 3-7.  As Attorney Ettenger notes, Ms. "Panzarella acknowledges that she was served the Complaint in or around January, 2014, but was not aware of the documents['] significance and that a response was required, and therefore failed to notify her supervisors of same."  *Id*. ¶ 3.  Rather Ms. Panzarella's "error was negligent, but not in bad faith or intentional."  *Id*.  In light of this error, the individual Defendants were unaware that a lawsuit had been filed against them and Cool Power and, consequently, "were unable to defend the action against them."  *Id*. ¶ 4.

As Defendants' counsel points out, Defendants contacted and ultimately retained the law offices of Kaufman, Dolowich & Voluck, LLP to defend them in this lawsuit "[w]ithin  days of receipt of the default motion" in early July 2014.  *Id*. ¶ 5.  Thereafter, Defendants contacted Plaintiff's counsel and "expressed the Defendants' willingness to defend the claims against them."  *Id*. ¶ 6.  Further, Attorney Ettenger requested that Plaintiff withdraw the motion for default judgment, but Plaintiff's counsel declined.  *Id*.  The Defendants then requested and were granted additional time to oppose Plaintiff's motion.  *Id*.

In reply, the Plaintiff claims that Defendants' default was willful and egregious.  *See* Pl.'s Reply at 3.  Specifically, Plaintiff argues that Defendants are not disputing that they were "repeatedly served by Plaintiffs."  *Id*.  Rather, Plaintiff emphasizes that "Defendants' sole excuse in the face of their default is that Cool Power's Office Manager, Elizabeth Panzarella, tossed the

copies of the summons and complaint she was handed by the process server into a drawer, and thereafter forgot about them." *Id*. at 4.  Using an argument that Ms. Panzarella lacked the ability to appreciate the importance of the Summons and Complaint is, according to Plaintiff's counsel, an "excuse…so flimsy as to rise to the level of willful evasion on its own." *Id*.  Plaintiff points out that Ms. Panzarella is "sufficiently proficient in the English language to have been able to read and comprehend a court summons, or at least be able to ascertain its importance, and Defendants do not argue or offer evidence that Panzarella is illiterate or intellectually challenged, or otherwise rebut the presumption of her competence." *Id*.  Rather, Plaintiff contends that Ms. Panzarella is the "primary person responsible on a daily basis for handling incoming and outgoing bills and other important correspondence and packages, and determining their importance and to whom they should be addressed – in fact, it can be reasonably surmised that no person at Cool Power is better positioned to accept summons on behalf of Defendants." *Id*.

Plaintiff's counsel goes on to state that "Defendants' attribution of their default entirely to Panzarella's alleged carelessness disregards the three additional copies of the summons and complaint Defendants were served with by mail two times to each Individual Defendant by process server on February 12, 2104, and once by the Secretary of State which *ex officio* mailed the summons and complain[t] to Cool Power." *Id*. at 5 (emphasis in original).  Plaintiff argues that "the only reasonable conclusion that can be reached is that Defendants have intentionally ignored service and defaulted in this action in the hope that Plaintiff would abandon his claims against them; and that once confronted with the reality of their liability, they ungallantly offered up Panzarella as a scapegoat in a ruse so transparent as to insult the intelligence of the Court." *Id.*

In view of the circumstances presented here, the Court finds that Defendants' default was not willful in nature.  Courts will find willfulness where "there is evidence of bad faith" or in the presence of "egregious or deliberate conduct."  *Holland v. James,* No. 05 Civ. 5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. Alliance Ins. Co., Ltd.,* 92 F.3d at 60–61). Further, "Courts should 'resolve any doubt about [a defendant's] willfulness in [its] favor.'"  *Int'l Reformed University & Seminary*, 2014 WL 923394, at *3 (quoting *Raheim v. New York City Health and Hosps. Corp.,* No. 96 Civ. 1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007)).

Here, the Court finds that as soon as Defendants became aware of the lawsuit - - as detailed in the affidavits submitted by Schmider and Taormina - - they immediately took steps to defend themselves in this action.  "Courts in this District have noted that the relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default."  *Ariston Props., LLC v. Messer (In re FKF 3, LLC)*, 501 B.R. 491, 502 (S.D.N.Y. 2013) (citing *In re Fairpoint Comm'cns, Inc.*, 462 B.R. 75, 81 (Bankr. S.D.N.Y. 2012)  and *In re JWP Info. Servs.*, Inc., 231 B.R. 209, 212 (Bankr. S.D.N.Y. 1999) ("It is [the party's] actions after he became aware of the existence of the Trustee's motion . . . that reaches the level of wil[l]fulness.")).  Preliminarily, Ms. Panzarella acknowledges receipt of papers in or around January 30, 2014 but asserts that she "is not experienced in legal matters" and lacked an understanding of their importance, as a result of which she filed the papers away at that time.  Panzarella Aff. ¶ 2.  After Defendant Schmider was served with Plaintiff's June 30, 2014 motion for default judgment, Defendants "immediately retained" the law firm of Kaufman, Dolowich & Voluck, LLP to represent them in this matter.  Defendants were then informed that service had been effected on Cool Power via the New York Secretary of State and on the

individual Defendants via personal service on Ms. Panzarella.  Schmider Aff. ¶ 3.  On receiving Plaintiff's motion papers, Defendant Schmider approached Ms. Panzarella and received confirmation that she did, in fact, receive papers earlier that year but was unaware of their "significance" and did not advise Defendants at that time.  *Id.*  ¶ 4. Ms. Panzarella states that had she known that these papers required a response, she would have "certainly…provided them to [her] employer."  Panzarella Aff. ¶ 4.  Further, Schmider and Taormina acknowledge Ms. Panzarella's error and note that had they been provided with the papers when they arrived, they "would have promptly retained counsel and requested that they defend the Defendants regarding this lawsuit."  Schmider Aff. ¶ 5; Taormina Aff. ¶ 5.

Defendants' counsel entered a Notice of Appearance on July 24, 2014, less than one month after Plaintiff's motion for default judgment was filed.  On that same date, counsel requested an extension of time from the Court to respond to the motion pointing out that they were in discussions with Plaintiff's counsel for possible withdrawal of the default judgment motion in exchange for answering the Complaint.  On August 6, 2014, Defendants' counsel advised the Court that they were engaged in settlement negotiations with Plaintiff's counsel and requested that the motion for default judgment be held in abeyance.  These actions show that Defendants acted diligently to attempt to resolve this case as soon as they became aware of the lawsuit.

Although the Court appreciates the presumption of service based on the affidavits of service and executed summonses filed by Plaintiff's counsel, the Court does not find that Defendants' actions in failing to timely respond to the Complaint were willful based solely upon the presumption of service.  *See Ariston Props., LLC*, 501 B.R. at 502 (explaining that "even where notice was adequate and the defaulting party failed to rebut the presumption of receipt, if

the party responded promptly after learning of the action, courts have found that the party's default was not willful.") (internal citations omitted); *see also In re FairPoint Comm'cns, Inc.,* 462 B.R. at 81.  The affidavits submitted by Schmider and Taormina reflect that the individual Defendants were unaware of the Summons and Complaint until after the motion for default judgment was filed, at which point they moved promptly to retain counsel.  Plaintiff's counsel argues that blaming the default on Ms. Panzarella is disingenuous.  Apart from speculation, however, Plaintiff's counsel has not provided any factual basis to discredit Ms. Panzarella's statements, rendered here under oath.  Neither has Plaintiff's counsel provided any legal authority to persuade the Court otherwise.

Disputing Ms. Panzarella's representations with conclusory assertions is not sufficient to establish that Defendants' actions were willful in failing to answer the pleading.  Moreover, even accepting for the sake of argument that Ms. Panzarella was in a position to understand and determine the legal significance of the Summons and Complaint, the individual Defendants have provided sworn statements that they were unaware of the Summons and Complaint until receiving the motion for default judgment in June 2014.

Panzarella's actions, although negligent, do not reflect a willful or egregious disregard of Defendants' obligations in defending this lawsuit.  The Court therefore finds that Defendants' default cannot be characterized as willful in nature.  *See Sibley v. Choice Hotels Int'l, Inc.*, No. 14 Civ. 0634, --- F.Supp.3d ----, 2015 WL 149913, at *3 (E.D.N.Y. Jan. 7, 2015) (adopting report and recommendation finding that defendants did not willfully default when they retained counsel and requested an extension of time to answer only three days after their time to respond to the complaint had elapsed); *Int'l Reformed Univ. & Seminary*, 2014 WL 923394, at *4 (adopting report and recommendation finding that default was not willful where defendants

retained counsel and filed a motion to vacate within three weeks of the entry of default);

*Wharton v. Nassau Cnty.*, No. 10 Civ. 0265, 2010 WL 4878998, at *2 (E.D.N.Y. Nov. 22, 2010)

("Even without considering whether service was proper or whether the parties' alleged

stipulation was effective, the worst that can be said about Defendants' behavior is that they

missed a deadline and then, without prompting by Plaintiff, corrected their mistake by filing an

Answer after a relatively short delay. Such conduct is arguably careless, but it does not rise to the

level of willfulness required for a default judgment.").

Next, to satisfy the criteria of a "meritorious defense," the defaulting defendant must

show some evidence beyond conclusory denials of the allegations set forth in the Complaint.  *See*

*Int'l Reformed University & Seminary*, 2014 WL 923394, at *4.  "A defense is meritorious if it is

good at law so as to give the factfinder some determination to make."  *Am. Alliance Ins. Co.,*

*Ltd.,* 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc.,*

856 F.2d 873, 879 (7th Cir. 1988)).  In the Complaint, Plaintiff alleges a number of wage and

hour claims stemming from his employment as a Plumber Mechanic with Cool Power, including

the failure to compensate him for overtime hours in violation of the NYLL and FLSA.  Plaintiff

has also alleged common law causes of action for breach of contract and *quantum meruit* against

the Defendants.  More specifically, Plaintiff asserts that Defendants failed to compensate him for

time spent travelling between the Cool Power warehouse in Hauppauge and various job sites as

far as New York City and Montauk.  Plaintiff also notes that he was not compensated for work

performed before and after his regular shift.

Having reviewed the company's books, records, and timesheets, individual Defendants

Schmider and Taormina deny all of the allegations set forth in the Complaint.  *See* Schmider Aff.

¶¶ 6-7; Taormina Aff. ¶¶ 6-7.  Based on these records, Defendants "believe that Plaintiff was

paid for all of the hours that he worked, including travel time and set up time." *See* Schmider Aff. ¶ 7; Taormina Aff. ¶ 7.  Defendants further explain that "Plaintiff examined all of his time sheets and verified that his time was accurate." *See* Schmider Aff. ¶ 7; Taormina Aff. ¶ 7. Moreover, the Defendants state that they have "spoken with [Plaintiff's] supervisors and they have advised that Plaintiff was paid for all the time he worked during his employment with the Company." *See* Schmider Aff. ¶ 7; Taormina Aff. ¶ 7.  Schmider and Taormina further assert that "there was a period of time that Plaintiff acted in a supervisory capacity for the Company and [they] believe that he should be classified as an exempt employee under the relevant law." *See* Schmider Aff.

¶ 8; Taormina Aff. ¶ 8.  In support of the latter affirmative defense, Attorney Ettenger asserts that "Cool Power is prepared to produce supervisors that will state that [Plaintiff] was paid for travel time and set up time and that he is manufacturing a claim against his former employer." *See* Ettenger Decl. ¶ 8.

The Court takes note that Defendants, in seeking vacatur of the defaults, have annexed a proposed Answer to the Complaint, listing fourteen distinct affirmative defenses.  *See* Answer to Complaint annexed as Ex. "4" ("Answer") to the Ettenger Decl. [DE 24-5].  These affirmative defenses include:  (1) failure to state a claim for which relief may be granted; (2) Plaintiff was properly paid for all hours worked; (3) the Complaint is barred, in whole or in part, pursuant to, *inter alia*, 29 U.S.C. §§ 258 and 259(a), since Defendants acted in good faith and in reliance upon applicable regulations and interpretations with regard to some or all of the allegations set forth in the Complaint; (4) supplemental or pendent jurisdiction should not be exercised over any of the claims; (5) New York Wage Orders preclude this action in whole or in part; (6) failure to mitigate damages; (7) Plaintiff's alleged damages should be reduced on the basis of his

comparative fault or negligence; (8) the doctrine of waiver; (9) the doctrine of unclean hands;
(10) the Complaint is barred, in whole or in part, by the doctrines of judicial and/or equitable
estoppel; (11) the doctrine of laches; (12) to the extent that Plaintiff has received other benefits
and/or awards attributable to an injury for which he seeks compensation here, such benefits
and/or awards should offset, in whole or in part, any award received here for the same injury;
(13) Plaintiff is entitled to a jury trial only as to those issues for which a jury trial is permitted by
the applicable statutes, regulations and ordinances; (14) Plaintiff is exempt from receiving
overtime, pursuant to the New York State Department of Labor Minimum Wage Order for the
Building Service Industry. *Id.* ¶¶ 106-119.  These defenses suggest that Plaintiff may have been
lawfully compensated during his employment with Defendants between June 2010 and March
2013.  Plaintiff claims that Defendants' asserted defenses are insufficient, pointing out that
Defendants have not provided any affidavits from supervisors showing that Cool Power's wage
and hour records reflect that the Plaintiff was lawfully compensated.  However, as the Second
Circuit has previously explained, the defenses asserted "need not be ultimately persuasive at this
stage." *Am. Alliance Ins. Co., Ltd.*, 92 F.3d 57.  The proposed Answer combined with the
affidavits of Schmider and Taormina provide the Court with the semblance of a meritorious
defense sufficient to satisfy a finding of "good cause" under Rule 55(c).

Next, the Court must analyze whether vacatur will be prejudicial to the Plaintiff.  Plaintiff
argues that Defendants' "initial six-month long default has already provided Defendants with the
opportunity to engage in fraud and collusion in their proffered defense, as evidenced by
Defendants' laughable scapegoating of Panzarella and failure to identify the mystery supervisors
or submit the records they allege support their claims."  *See* Reply at 7-8.  Further, continued
delay, according to Plaintiff, "offers Defendants the opportunity to dispose of or alter whatever

records they do have of Plaintiff's work hours." *Id.* at 8.  In addition, Plaintiff claims that "vacating the certificate of default and denying Plaintiff's motion greatly increases the time Plaintiff will have to wait for his eventual judgment, putting  him in a worse position and potentially challenging his ability to continue prosecuting his claims."  *Id.*

Defendants maintain that the delay has not caused any prejudice to the Plaintiff.  *See* Defs.' Opp'n at 8.  According to Defendants' counsel, "[n]o records have been lost and [Plaintiff] has not suffered any harm."  *Id.*  Counsel asserts that this case is not unlike *Linkov v. Golding,* No. 12 Civ. 2722, 2013 WL 5922974, at *5 (E.D.N.Y. Oct. 4, 2013), *adopted by* 2013 WL 5922974 (E.D.N.Y. Oct. 31, 2013), where the Court found that "[t]here is no suggestion that defendant's failure to answer or otherwise respond to the complaint for approximately fourteen months has prejudiced plaintiff in any way."  *Linkov*, 2013 WL 5922974, at *5.

"In order to show the requisite level [of] prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated."  *See Int'l Reformed University & Seminary*, 2014 WL 923394, at *5 (quoting *Murray Engineering, P.C. v. Windermere Props. LLC*, No. 12 Civ. 0052, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013)).  "Prejudice results when delay causes 'the loss of evidence, create[s] increased difficulties of discovery or provide[s] greater opportunity for fraud and collusion.'"  *Ward v. Ramkalawan,* No. 11 Civ. 4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013) (quoting *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir. 1983)).  As such, "delay alone is not a sufficient basis for establishing prejudice."  *Id.*

In view of the facts here and the applicable law, the Court does not find that denial of Plaintiff's motion would result in prejudice.  Although Plaintiff argues that the delay caused by Defendants here facilitated potential spoliation of relevant evidence, that assertion at this

juncture is nothing more than speculation, unsupported by any evidence.  *See Iqbal v. Multani*, No. 12 Civ. 3067, 2013 WL 5329286, at *5 (E.D.N.Y. Aug. 28, 2013), *adopted by* 2013 WL 5329286 (E.D.N.Y. Sept. 20, 2013) (finding that plaintiff has presented no facts or arguments showing how he will be prejudiced if the defaults entered against two individual defendants are vacated); *Sibley*, 2015 WL 149913, at *4 ("Here, this case is in its early stages and there is no indication that evidence has been lost or that vacating the default will result in difficulties of discovery.  Plaintiff's counsel merely speculates that "[s]uch delay increases the chance that evidence needed for discovery is lost or destroyed.") (internal citation omitted); *Westchester Fire Ins. Co. v. Tyree Service Corp.*, No. 14 Civ. 5222, --- F.Supp.3d ----, 2014 WL 7370105, at *3 (E.D.N.Y. Dec. 29, 2014) ("The delay occasioned thus far by the Defendants' default, spanning only a few months, has not been so prolonged as to raise a serious risk of lost evidence or increased difficulties of discovery.").

To the extent Plaintiff argues that disposition of this action on the merits will delay Plaintiff's recovery of damages, it is well-settled that delay alone does not suffice as prejudice under Rule 55(c).  *See Iqbal,* 2013 WL 5329286, at *5 (finding that "defendants' delay in filing their answers will not affect plaintiff's ability to proceed with his case."); *see also Fischer v. Forrest*, No. 14 Civ. 1307, 2014 WL 2717937, at *4 (S.D.N.Y. Jun. 16, 2014) ("[I]t is well established that delay alone is not a sufficient basis for establishing prejudice.  Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.") (internal quotation omitted).  Apparently, the parties voluntarily spent some time in settlement negotiations.  Based on the record here, Defendants' counsel filed a Notice of Appearance on July 24, 2014 and the parties engaged in settlement discussions until September 2, 2014, when Defendants' counsel reported that

21

settlement discussions had broken down and that Defendants would be opposing Plaintiff's

motion.  Therefore, at least one month's delay was occasioned by the parties' voluntary

settlement negotiations.

In light of all the factors encompassed by Rule 55(c), the Court respectfully recommends

to Judge Seybert that Plaintiff's motion for entry of default judgment be DENIED and that the

Court vacate the June 9, 2014 Certificates of Default entered against the Defendants so that this

case can proceed on the merits.  *See Fischer*, 2014 WL 2717937, at *4.

**IV.    CONCLUSION**

For the foregoing reasons, this Court respectfully recommends to Judge Seybert that

Plaintiff's motion for entry of default judgment be DENIED and that the Court vacate the June 9,

2014 Certificates of Default entered against the Defendants.


**V.    OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  A

courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna

Seybert, and to the Chambers of the undersigned.  Any requests for an extension of time for

filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14)

day period for filing objections.  Failure to file objections will result in a waiver of those

objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*,

118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*,

84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
        February 13, 2015


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON